IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

SKECHERS U.S.A., INC. II,

    Plaintiff,

v.

THE PARTNERSHIPS AND UNINCORPORATED
ASSOCIATIONS d/b/a THE DOMAIN NAMES
IDENTIFIED ON SCHEDULE "A",

    Defendants.

Civil Action No.: 1:24-cv-04541

## COMPLAINT

Plaintiff, SKECHERS U.S.A., INC. II ("SKECHERS" or "Plaintiff"), hereby files this Complaint against the Partnerships and Unincorporated Associations d/b/a the Domain Names Identified on Schedule "A" attached hereto (collectively, "Defendants"), and for its Complaint hereby alleges as follows:

### JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. § 1338(a)–(b), and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants because each of the Defendants directly targets consumers in the United States, including Illinois, through at least the fully interactive commercial internet stores operating under the domain names identified in Schedule "A" (collectively, the "Defendant Domain Names"). Specifically, Defendants are reaching out to do business with Illinois residents by operating commercial, interactive internet stores through which

Illinois residents can purchase products bearing counterfeit versions of Plaintiff's trademarks. Defendants have targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products bearing counterfeit versions of Plaintiff's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Illinois.

**INTRODUCTION**

3. This action has been filed by Plaintiff to combat online counterfeiters who trade upon Plaintiff's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed products in connection with Plaintiff's trademarks, including but not limited to the trademark SKECHERS, which are covered by U.S. Trademark Registration Nos. 1,851,977; 4,396,447; 3,881,672; 3,424,421; 3,158,807; 4,247,243; 6,185,622; 5,904,316; 5,916,493; 6,251,910; 6,251,912; 6,251,913; 2,916,380; 6,180,734; 6,029,500; 3,403,616; and 7,213,997 (collectively, the "SKECHERS Trademarks"). The registrations are valid, subsisting, unrevoked, and uncancelled. The registrations constitute prima facie evidence of validity and of Plaintiff's exclusive right to use the trademarks pursuant to 15 U.S.C. § 1057(b). The Trademark Registration Nos. 1,851,977; 4,396,447; 4,247,243; 4,400,511; 3,424,421; 3,158,807; 3,881,672; 2,916,380; and 3,403,616 are incontestable. Genuine and authentic copies of the U.S. federal trademark registration certificates for the SKECHERS Trademarks are attached as **Exhibit 1**. Plaintiff is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing counterfeit products over the internet. Plaintiff has been and continues to be irreparably harmed through consumer confusion, dilution,

and tarnishment of its valuable trademarks as a result of Defendants' actions and hereby seeks injunctive and monetary relief.

## THE PLAINTIFF

4. Plaintiff, SKECHERS U.S.A., INC. II, is a Virginia corporation and a wholly owned subsidiary of Skechers U.S.A., Inc. that maintains its principal place of business at 228 Manhattan Beach Blvd., Manhattan Beach, California, 90266. Hereinafter, for the sake of brevity, the terms "SKECHERS" or "Plaintiff" will reference both SKECHERS U.S.A., Inc. II and its parent company, Skechers U.S.A., Inc. Plaintiff is engaged in the business of developing, selling, and distributing high-quality, comfortable, stylish, and innovative shoes, apparel, and accessories, including within the Northern District of Illinois under the federally registered SKECHERS Trademarks (collectively, the "SKECHERS Products"). Defendants' sale of counterfeit products, using the SKECHERS Trademarks without authorization, is in violation of Plaintiff's intellectual property rights and is irreparably damaging Plaintiff and its affiliates.

5. Plaintiff's brand, symbolized by the SKECHERS Trademarks, is a recognized symbol of high-quality, comfortable, stylish, and innovative shoes, apparel, and accessories at reasonable prices.

6. The SKECHERS Trademarks are distinctive and identify the merchandise as goods originating from Plaintiff. The registrations for the SKECHERS Trademarks constitute prima facie evidence of validity and of Plaintiff's exclusive right to use the trademarks pursuant to 15 U.S.C. § 1057(b). The SKECHERS Trademarks have been continuously used and never abandoned.

7. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the SKECHERS Trademarks. Plaintiff's authentic SKECHERS Products feature unique designs that are instantly recognizable to consumers.

Plaintiff has invested significant resources to market and promote SKECHERS Products around the world. As a result, products bearing the SKECHERS Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff.

8. For many years, Plaintiff has operated the skechers.com website. Sales of Plaintiff's SKECHERS Products via this website are significant. The website features proprietary content, images, and designs exclusive to Plaintiff's brand.

**ORIGINAL**



https://www.skechers.com/

**COUNTERFEIT**



**THE DEFENDANTS**

9. Defendants are individuals and/or business entities who, upon information and belief, reside in the People's Republic of China and/or other foreign jurisdictions. Defendants conduct business throughout the United States, including within Illinois and in this judicial district, through the operation of the fully interactive commercial websites operating under the Defendant Domain Names. Defendants facilitate sales by designing the websites operating under the Defendant Domain Names, so they appear to unknowing consumers to be authorized online retailers selling genuine SKECHERS Products. Defendants target the United States, including Illinois, and have offered to sell and, on information and belief, have sold and continue to sell

5

counterfeit SKECHERS Products to consumers within the United States, including in Illinois and this judicial district.

## THE DEFENDANTS' UNLAWFUL CONDUCT

10. The success of the SKECHERS brand has resulted in its counterfeiting. Defendants conduct their illegal operations through fully interactive commercial websites operating under the Defendant Domain Names. Each Defendant targets consumers in the United States, including the State of Illinois, and has offered to sell and, on information and belief, has sold and continues to sell products using the SKECHERS Trademarks ("Counterfeit Products") that violate Plaintiff's intellectual property rights to consumers within the United States, including in the State of Illinois.

11. Upon information and belief, at all times relevant hereto, the Defendants in this action have had full knowledge of Plaintiff's ownership of the SKECHERS Trademarks, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

12. Defendants, without any authorization or license from Plaintiff, have knowingly and willfully used and continue to use Plaintiff's SKECHERS Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Products into the United States and Illinois over the internet.

13. Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. A 2021 U.S. Customs and Border Protection report on seizure statistics indicated that e-commerce sales accounted for 13.3% of total retail sales with second quarter of 2021 retail e-commerce sales estimated at $222.5 billion. U.S. Customs and Border Protection, *Intellectual Property Right Seizure Statistics*, FY 2021 (https://www.cbp.gov/sites/default/files/assets/documents/2022-

Sep/202994%20-%20FY%202021%20IPR%20Seizure%20Statistics%20BOOK.5%20-%20FINAL%20%28508%29.pdf) at 23. A true and correct copy of CBP's FY 2021 report is attached hereto as **Exhibit 2**. In FY 2021, there were 213 million express mail shipments and 94 million international mail shipments. *Id*. Nearly 90 percent of all intellectual property seizures occur in the international mail and express environments. *Id* at 27. The "overwhelming volume of small packages also makes CBP's ability to identify and interdict high risk packages difficult." *Id*. at 23.

14. Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and third-party accounts, including, but not limited to, PayPal, Inc. ("PayPal") accounts, behind layers of payment gateways so that they can continue operations in spite of Plaintiff's enforcement efforts. Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that offshore counterfeiters regularly move funds from U.S.-based PayPal accounts to China-based bank accounts outside the jurisdiction of this Court.

15. Upon information and belief, Defendants also deceive unknowing consumers by using the SKECHERS Trademarks without authorization within the content, text, and/or meta tags of their websites to attract various search engines crawling the internet looking for websites relevant to consumer searches for SKECHERS Products. Additionally, upon information and belief, Defendants use other search engine optimization (SEO) tactics so that the Defendant Domain Names show up at or near the top of relevant search results and misdirect consumers searching for genuine SKECHERS Products and/or use social media spamming that redirects consumers to the Defendant Domain Names where consumers could be misled into thinking they were purchasing from authentic and/or authorized websites.

16. Defendants' use of the SKECHERS Trademarks on or in connection with the advertising, marketing, distribution, offering for sale and sale of Counterfeit Products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff. Defendants have manufactured, imported, distributed, offered for sale, and/or sold Counterfeit Products using the SKECHERS Trademarks and continue to do so.

17. Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the SKECHERS Trademarks in connection with the advertisement, offer for sale, and sale of Counterfeit Products through the websites operated at the Defendant Domain Names. The Counterfeit Products are not genuine SKECHERS Products. SKECHERS did not manufacture, inspect, or package the Counterfeit Products and did not approve the Counterfeit Products for sale or distribution. The Defendants, through the websites operated at the Defendant Domain Names, offer shipping to the United States, including Illinois, and, on information and belief, have sold Counterfeit Products into the United States, including Illinois.

18. Additionally, several of the Defendant Domain Names use a mark which is nearly identical and/or confusingly similar to at least one of Plaintiff's SKECHERS Trademarks (the "Cybersquatted Subject Domain Names").

19. Defendants have registered and/or used their respective Cybersquatted Subject Domain Names with the bad faith intent to profit from Plaintiff's SKECHERS Trademarks.

20. Defendants do not have nor ever had the right or authority to use Plaintiff's SKECHERS Trademarks. Further, Plaintiff's SKECHERS Trademarks have never been assigned or licensed to be used on any of the websites operating under the Cybersquatted Subject Domain Names. Upon information and belief, Defendants have provided false and/or misleading contact

information when applying for the registration of the Cybersquatted Subject Domain Names or have intentionally failed to maintain accurate contact information with respect to the registration of the Cybersquatted Subject Domain Names.

21. Defendants have never used the Cybersquatted Subject Domain Names in connection with a bona fide offering of goods or services.

22. Defendants have not made any bona fide non-commercial or fair use of Plaintiff's SKECHERS Trademarks on a website accessible under the Cybersquatted Subject Domain Names.

23. Defendants have intentionally incorporated Plaintiff's SKECHERS Trademarks in their respective Cybersquatted Subject Domain Names to divert consumers looking for Plaintiff's website to their own websites for commercial gain.

24. Upon information and belief, Defendants will continue to register or acquire domain names for the purpose of selling Counterfeit Products that infringe upon the SKECHERS Trademarks unless preliminarily and permanently enjoined.

25. Defendants' use of the SKECHERS Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

26. Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

27. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the registered SKECHERS Trademarks

9

in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The SKECHERS Trademarks are highly distinctive. Consumers have come to expect the highest quality from Plaintiff's products provided under the SKECHERS Trademarks.

28. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with the SKECHERS Trademarks without Plaintiff's permission.

29. Plaintiff is the exclusive owner of the SKECHERS Trademarks. The SKECHERS Trademarks (**Exhibit 1**) are in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the SKECHERS Trademarks and are willfully infringing and intentionally using counterfeits of the SKECHERS Trademarks. Defendants' willful, intentional, and unauthorized use of the SKECHERS Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general public.

30. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

31. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known SKECHERS Trademarks.

32. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Products.

## COUNT II
### FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

33. Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

34. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Products have created and are creating a likelihood of confusion, mistake, and deception amongst the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

35. By using the SKECHERS Trademarks in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products.

36. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Products to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

37. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## COUNT III
### CYBERSQUATTING (15 U.S.C. § 1125(d))

38. Plaintiff repeats and incorporates by reference herein its allegations contained in the above paragraphs of this Complaint.

39. Defendants acted with the bad faith intent to profit from Plaintiff's SKECHERS Trademarks and used the Cybersquatted Subject Domain Names.

40. Plaintiff's marks were distinctive and famous at the time Defendants registered the Cybersquatted Subject Domain Names.

11

41. The Cybersquatted Subject Domain Names are identical to, confusingly similar to, or dilutive of one or more of Plaintiff's SKECHERS Trademarks.

42. Defendants' conduct is done with knowledge and constitutes a willful violation of Plaintiff's rights in Plaintiff's SKECHERS Trademarks. At a minimum, Defendants' conduct constitutes reckless disregard for and willful blindness to Plaintiff's rights.

43. Defendants' actions constitute cybersquatting in violation of §43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

44. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily preliminarily, and permanently enjoined and restrained from:

   a. using the SKECHERS Trademarks or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine SKECHERS Product or is not authorized by Plaintiff to be sold in connection with the SKECHERS Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine SKECHERS Product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the SKECHERS Trademarks;

c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Products are those sold under the authorization, control, or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

d. further infringing the SKECHERS Trademarks and damaging Plaintiff's goodwill;

e. otherwise competing unfairly with Plaintiff in any manner;

f. shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, or authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's trademarks, including the SKECHERS Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof; and

g. using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Domain Names or any other website that is being used to sell or is the means by which Defendants could continue to sell Counterfeit Products; and

h. operating and/or hosting websites at the Defendant Domain Names and any online marketplace accounts registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing the SKECHERS Trademarks or any reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine SKECHERS Product or not authorized by Plaintiff to be sold in connection with the SKECHERS Trademarks.

2) That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report

13

under oath setting forth in detail the manner and form in which Defendants have complied with paragraph 1, a through h, above;

3) Entry of an Order that, at Plaintiff's choosing, the registrants of the Defendant Domain Names shall be changed from the current registrants to Plaintiff, and that the domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Defendant Domain Names to a registrar of Plaintiff's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap, Inc. ("Namecheap"), shall take any steps necessary to transfer the Defendant Domain Names to a registrar account of Plaintiff's selection; or that the same domain name registries shall disable the Defendant Domain Names and make them inactive and untransferable;

4) Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, internet search engines such as Google, Bing, and Yahoo, web hosts for the Defendant Domain Names, and online marketplace account registrars, shall:

   a. disable and cease providing services for any accounts through which Defendants engage in the sale of Counterfeit Products using the SKECHERS Trademarks, including any accounts associated with the Defendants;

   b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of Counterfeit Products using the SKECHERS Trademarks; and

   c. take all steps necessary to prevent links to the Defendant Domain Names identified in

Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index;

5) That Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the SKECHERS Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

6) In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the SKECHERS Trademarks;

7) That Plaintiff be awarded its reasonable attorneys' fees and costs; and

8) Award any and all other relief that this Court deems just and proper.

DATED:  May 31, 2024                      Respectfully submitted,

*/s/ Keith A. Vogt*
Keith A. Vogt (Bar No. 6207971)
Keith Vogt, Ltd.
33 West Jackson Boulevard, #2W
Chicago, Illinois 60604
Telephone: 312-971-6752
E-mail:  keith@vogtip.com

**ATTORNEY FOR PLAINTIFF**